Joseph J. Sullivan III (JS 1889)
Sheindlin & Sullivan, LLP
350 Broadway, 10th Floor
New York, NY 10013
(646) 201-9120

Attorneys for Plaintiff
CAPITOL RECORDS, INC.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CAPITOL RECORDS, INC., a Delaware
corporation,

                             Plaintiffs,

           - v -

DIRECT SOURCE SPECIAL PRODUCTS, INC.,
a Canadian corporation,

                             Defendant.
----------------------------------------------------------X

**JUDGE KARAS**

**07 CV 2995**

Case No. _____

**COMPLAINT**

      Plaintiff Capitol Records, Inc. ("Capitol"), as and for its Complaint against defendant Direct Source Special Products, Inc. (hereinafter "Defendant" and "Direct Source"), alleges as follows:

### INTRODUCTION

      1.    This is an action for trademark infringement, common law copyright infringement and related state law claims arising out of Defendant's unauthorized exploitation of sound recordings that are owned and/or controlled by EMI. Defendant knowingly, intentionally, and willfully infringed Capitol's rights in certain sound recordings by, among other things, advertising, promoting, importing, exporting, reproducing, manufacturing, distributing, offering for sale, selling, and/or otherwise exploiting the sound recordings via Internet websites and retail outlets. Defendant neither sought nor obtained licenses and/or other authorization from Capitol

to use its valuable property, and Defendant has profited from its illegal conduct at Capitol's expense. Capitol seeks declaratory and injunctive relief and actual damages for Defendant's willful trademark and copyright infringement and other unlawful acts.

## PARTIES

2.  Plaintiff Capitol is a Delaware corporation with its principal place of business at 150 Fifth Avenue, New York, New York, 10011.

3.  Upon information and belief, defendant Direct Source is a Canadian corporation with at least one address in New York at P.O. Box 2600, Plattsburgh, New York, 12901-0229.

## JURISDICTION AND VENUE

4.  This is an action for trademark infringement arising under 15 U.S.C. § 1114, false designation of origin, description or representation under 15 U.S.C. § 1125(a), and trademark dilution under 15 U.S.C. § 1125(c). This is also an action for common law copyright infringement/misappropriation, common law trademark infringement, unfair competition, and unjust enrichment. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and §§ 1338(a) and (b) and under its supplemental jurisdiction. This Court also has jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds the value of $75,000 exclusive of interest and costs.

5.  This Court has personal jurisdiction over Defendant pursuant to NY CPLR § 302, because Defendant has transacted business within the state of New York, contracted to supply goods or services in the state of New York, committed tortious acts within the state of New York, and/or committed tortious acts without the state of New York causing injury to persons or property within the state of New York.

6. Venue for this action is proper in the United States District Court for the Southern District of New York under the provisions of 28 U.S.C. §§ 1391(a), (b) and (c) and §1400(a).

## FACTS

### I. Defendant Has Violated And Continues To Violate Capitol's Common Law Copyrights

7. Capitol is, and has been at all times relevant to matters set forth in this Complaint, engaged in the business of producing, recording, manufacturing, marketing, distributing, and selling sound recordings containing performances of musical compositions. Capitol distributes and sells such recordings throughout the United States and, through its foreign affiliates, across the globe in the form of records, compact discs ("CDs"), cassette tapes, and the like (collectively "Albums").

8. Capitol has invested and continues to invest substantial sums of money, time, effort, and creative talent to manufacture, advertise, promote, sell, and license sound recordings embodying the performances of its artists. In order to create sound recordings, Capitol works with and makes payments to, among others, its recording artists, other musicians, producers, technicians and other staff personnel, and various musicians' unions. Capitol is compensated for its creative efforts and monetary investments largely from revenue attributable to the sale of sound recordings on albums to the public and the licensing of sound recordings to third parties.

9. At all times relevant to the matters herein, Capitol has been, and continues to be, the owner or licensee of exclusive rights under the common law of the State of New York with respect to certain sound recordings. Capitol has entered into various agreements by which it obtained the sole, exclusive, and complete rights to manufacture, distribute, and sell the recorded musical performances of popular recording artists which initially were "fixed" prior to February

15, 1972 and which therefore are subject to protection under state statutory and common law (collectively, the "Capitol Recordings").

10. Upon information and belief, Direct Source advertised and continues to advertise the sale of CDs containing Capitol Recordings by Capitol's exclusive recording artist Dean Martin under various titles. These titles include, but are not limited to, the following: "Dean Martin" (the "First Dean Martin Compilation"), "Dean Martin" (the "Second Dean Martin Compilation"), "Dean Martin: Cocktail Hour" (the "Third Dean Martin Compilation"), "Dean Martin: Shaken Not Stirred" (the "Fourth Dean Martin Compilation"), and "The Legendary Dean Martin" (the "Fifth Dean Martin Compilation") (collectively, the "Dean Martin Compilations").

11. None of the Capitol Recordings on the Dean Martin Compilations has ever been licensed to Direct Source for such use, nor has Direct Source been authorized to create derivative works based on any of the Capitol Recordings.

12. Upon information and belief, Direct Source has advertised and continues to advertise, promote, import, export, reproduce, manufacture, distribute, offer for sale, sold, and/or otherwise exploit for commercial advantage or private financial gain copies of the Dean Martin Compilations.

13. Upon information and belief, Direct Source advertised the sale of CDs containing Capitol Recordings, including recordings by Nat King Cole, Tony Bennett and Count Basie, under various titles. These titles include, but are not limited to, the following: "The Legend," "The Golden Voice," "Classic Songs," 36 Legendary Songs," "Ultra Lounge: Favorite Crooners From a Classic Era," and several other box sets of CDs containing such recordings (collectively, the "Cole/Bennett Compilations").

14. None of the Capitol Recordings on the Cole/Bennett Compilations has ever been licensed to Direct Source for such use, nor has Direct Source been authorized to create derivative works based on any of the Capitol Recordings.

15. Upon information and belief, Direct Source has advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited for commercial advantage or private financial gain copies of the Cole/Bennett Compilations.

16. On or about March 31, 2006, a representative of Capitol sent via certified mail a letter to Direct Source demanding that it cease and desist its illegal activities.

17. On or about December 1, 2006 Capitol purchased copies of the Second Dean Martin Compilation, Third Dean Martin Compilation, and Fourth Dean Martin Compilation via the Internet through http://www.barnesandnoble.com (the "Purchased Compilations").

18. On or about December 4, 2006 Capitol received the Purchased Compilations. The packaging of the Purchased Compilations indicates the titles of the sound recordings included thereon and the performer of such sound recordings.

19. Upon information and belief, based on a review of the track listings and recordings included on the Purchased Compilations, the Dean Martin Compilations incorporate and feature Capitol Recordings.

20. Upon information and belief, Direct Source knew that the Capitol Recordings were protected by state copyright law and related common law and it has acted intentionally and willfully in violating and/or otherwise misappropriating Capitol's rights in the Capitol Recordings for its own financial gain.

21. As a result of Defendant's illegal conduct, Capitol has suffered, and continues to suffer irreparable harm, for which there is no adequate remedy at law. Among other harms, Defendant's conduct has deprived Capitol of substantial revenue and jeopardized Capitol's reputation and goodwill with its artists, musical collaborators and customers. These harms are difficult, if not impossible, to quantify.

22. Unless restrained from further infringing and unlawful behavior, Defendant will continue to violate Capitol's copyrights, misappropriate its property and, at great expense to Capitol, profit from its illicit acts.

23. Capitol is suffering irreparable harm and is without an adequate remedy at law for Direct Source's knowingly wrongful conduct.

## II. Defendant's Conduct Constitutes Trademark Infringement Against Capitol

24. Capitol is the registrant and exclusive owner of the ULTRA-LOUNGE Mark pursuant to the registration issued by the U.S. Patent and Trademark Office: Registration No. 2106918 (for musical sound recordings) among others. Capitol has continuously and exclusively used the trademark ULTRA-LOUNGE in commerce since 1996.

25. Capitol often distributes and sells its sound recordings under one of its famous trademarks, including, among others, the ULTRA-LOUNGE. This mark is used to promote Capitol's artists and music.

26. Capitol has invested, and continues to invest, substantial sums of money, time, effort, and creative talent to promote and develop goodwill in the ULTRA-LOUNGE trademark. Capitol has developed a strong reputation in these marks and works tirelessly to protect and further those reputations.

27. As a result of Capitol's extensive sales, marketing, and advertising of the ULTRA-LOUNGE mark in interstate commerce, it has become a famous identifier of top quality sound recordings. Consumers recognize that music that is sold with the ULTRA-LOUNGE mark is from one of the premiere record companies in the world, is of very high quality, and is fully licensed and legitimate. Thus, the ULTRA-LOUNGE Mark is well known and famous within the scope of 15 U.S.C. 1125 (c).

28. In order to promote and advertise the sale of its merchandise, including its unauthorized exploitation of Capitol Recordings, Direct Source has used and adopted Capitol's trademark ULTRA-LOUNGE. For example, Direct Source has released an album entitled "Ultra Lounge: Relax To The Smooth Sounds" (the "Ultra Lounge Compilation I") as well as a two CD set entitled "Ultra Lounge: Favorite Crooners From A Classic Era" (the "Ultra Lounge Compilation II") (the "Infringing CDs").

29. Direct Source has not obtained any rights, licenses or authorization of any sort which would permit them to Capitol's trademark ULTRA-LOUNGE on any albums that they distribute.

30. Upon information and belief, Direct Source has advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited for commercial advantage or private financial gain copies of the Infringing CDs.

31. On or about December 12, 2006 Capitol purchased copies of the Ultra Lounge Compilation I via the Internet through http://www.barnesandnoble.com (the "Purchased Compilations").

32. On or about December 19, 2006 Capitol received the Purchased Compilations. The packaging and cover of the Purchased Compilations contains the title of this album, namely the ULTRA-LOUNGE mark, in large print.

33. On information and belief, by reason of Direct Source's adoption and use of the term ULTRA-LOUNGE existing and potential customers of both Capitol and Direct Source, as well as members of the public, believe there is a sponsorship, affiliation, licensing, and/or other business relationship between Capitol and Direct Source, when in fact no such relationship exists.

34. Despite having been placed on notice of Capitol's rights, Direct Source infringed, and is continuing to infringe, Capitol's trademarks with knowledge of the likelihood of confusion and dilution of Capitol's trademark, and with knowledge that such confusion and dilution would cause harm to Capitol.

35. Capitol is suffering irreparable harm and is without an adequate remedy at law for Direct Source's knowingly wrongful conduct.

## COUNT I
## MISAPPROPRIATION

36. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Without Capitol's authorization, Defendant intentionally and willfully has advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited the Capitol Recordings by, among other things, selling unauthorized copies via the internet and retail stores for financial gain.

38. Defendant's conduct as alleged above constitutes and continues to constitute an unlawful misappropriation of property under the laws of the state of New York with respect to these Capitol Recordings.

39. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, in an amount to be proven at trial but in no event less than $75,000.

## COUNT II
## UNFAIR COMPETITION

40. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. Without Capitol's authorization, Defendant has intentionally and willfully advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited the Capitol Recordings by, among other things, selling unauthorized copies via the Internet and retail stores for financial gain.

42. Defendant's conduct constitutes, and continues to constitute, unfair competition under the laws of the state of New York with respect to those Capitol Recordings.

43. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, in an amount to be proven at trial but in no event less than $75,000.

## COUNT III
## COMMON LAW COPYRIGHT INFRINGEMENT

44. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Without Capitol's authorization, Defendant has intentionally and willfully advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for

38. Defendant's conduct as alleged above constitutes and continues to constitute an unlawful misappropriation of property under the laws of the state of New York with respect to these Capitol Recordings.

39. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, in an amount to be proven at trial but in no event less than $75,000.

## COUNT II
## UNFAIR COMPETITION

40. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. Without Capitol's authorization, Defendant has intentionally and willfully advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited the Capitol Recordings by, among other things, selling unauthorized copies via the Internet and retail stores for financial gain.

42. Defendant's conduct constitutes, and continues to constitute, unfair competition under the laws of the state of New York with respect to those Capitol Recordings.

43. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, in an amount to be proven at trial but in no event less than $75,000.

## COUNT III
## COMMON LAW COPYRIGHT INFRINGEMENT

44. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Without Capitol's authorization, Defendant has intentionally and willfully advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for

sale, sold, and/or otherwise exploited the Capitol Recordings by, among other things, selling unauthorized copies via the internet and retail stores for financial gain.

46. Defendant's conduct constitutes common law copyright infringement under the laws of the state of New York with respect to those Capitol Recordings.

47. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, in an amount to be proven at trial but in no event less than $75,000.

## COUNT IV
## UNJUST ENRICHMENT

48. Capitol repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Without Capitol's authorization, Defendant has intentionally and willfully advertised, promoted, imported, exported, reproduced, manufactured, distributed, offered for sale, sold, and/or otherwise exploited the Capitol Recordings by, among other things, selling unauthorized copies via the internet for financial gain. Defendant has profited from its unlawful activities thereby reaping financial rewards without having to pay the costs required to license or create the material that he used.

50. By unlawfully taking Capitol's property and disposing of it for commercial advantage without properly compensating Capitol, Defendant has obtained a windfall and has been enriched at Capitol's detriment and expense. Such actions constitute unjust enrichment under the laws of the state of New York.

51. Capitol has been injured as a result of Defendant's unlawful and inequitable conduct, and equity and good conscience require restitution, in an amount to be proven at trial but in no event less than $75,000.

## COUNT V
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Defendant's continued use of the terms ULTRA-LOUNGE to market, promote and sell sound recordings is likely to cause confusion with Capitol's use of its trademark in connection with related goods and services. Therefore, Defendant's use of the ULTRA-LOUNGE mark is likely to cause confusion, mistake and deception among consumers and the general public as to Capitol's affiliation with Defendant, thereby causing loss, damage, and injury to Capitol and the purchasing public.

54. Direct Source's use of the ULTRA-LOUNGE marks for goods related to sound recordings constitutes infringement of Capitol's U.S. trademark registrations and related rights under U.S. trademark laws, including 15 U.S.C. § 1051, et. seq. and 15 U.S.C. §1114.

55. On information and belief, such infringement was and continues to be deliberate, willful, and with bad faith intent to appropriate the goodwill associated with the ULTRA-LOUNGE trademark.

56. On information and belief, Direct Source knew or should have known that its adoption and continued use of the ULTRA-LOUNGE mark would cause confusion, mistake or deception among consumers and the public.

57. On information and belief, Direct Source knew of Capitol's reputation and, by adopting and continuing to use ULTRA-LOUNGE, intended to appropriate the goodwill associated with Capitol's federally registered trademark.

58. Based on the foregoing actions taken by Direct Source, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

59. By reason of the aforementioned actions taken by Direct Source, Capitol has suffered monetary damages in an amount to be proven at trial.

60. By reason of the aforementioned actions taken by Direct Source, Capitol is entitled to the full range of relief available under the provisions of the Lanham Act and the laws of the United States relating to trademarks and unfair competition, including 15 U.S.C. §§1116-1118.

### COUNT VI
### FALSE DESIGNATION OF ORIGIN, DESCRIPTION AND REPRESENTATION UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

61. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. Capitol's trademark the ULTRA-LOUNGE is a designation of origin, identifying Capitol as the exclusive source of goods and services sold under those marks, and distinguishes and represents Capitol's goods and services in the marketplace.

63. The foregoing actions taken by Direct Source constitutes false designations of origin, misrepresentations and unfair competition in violation of 15 U.S.C. §1125(a).

64. On information and belief, Direct Source's conduct has been knowing, willful, and deliberate, and was intended to cause mistake or to deceive, completely disregarding Capitol's rights in the ULTRA-LOUNGE mark.

65. As a result of Direct Source's willful disregard of Capitol's rights, Capitol has suffered and will continue to suffer irreparable harm to its rights and substantial loss of goodwill and reputation.

66. Defendant's wrongful acts, as alleged above, have permitted it to profit from the strength of the ULTRA-LOUNGE mark, in an amount not presently known but to be determined at trial.

67. Based on the foregoing actions taken by Direct Source, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

68. By reason of the aforementioned actions taken by Direct Source, Capitol has suffered monetary damages in an amount to be proven at trial, and has been willfully deprived of the value of its federally registered marks as a commercial asset in an amount to be proven at trial.

69. By reason of the aforementioned actions taken by Direct Source, Capitol is entitled to the full range of relief available under the provision of the Lanham Act and the U.S. laws relating to trademarks and unfair competition, including 15 U.S.C. §§1116-1118.

## COUNT VII
## TRADEMARK DILUTION UNDER THE LANHAM ACT (15 U.S.C. § 1125 (c))

70. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. The ULTRA-LOUNGE mark is distinctive and a famous trademark within the meaning of 15 U.S.C. §1125(c)(1).

72. Direct Source's use of the ULTRA-LOUNGE mark causes dilution of the distinctive quality of Capitol's famous marks.

73. On information and belief, Direct Source willfully intended to appropriate the goodwill associated with Capitol and its famous ULTRA-LOUNGE trademark, and to cause dilution to the marks.

74. By reason of the aforementioned actions taken by Direct Source, Capitol has suffered monetary damages in an amount to be proven at trial, and has been willfully deprived of the value of its federally registered marks as a commercial asset in an amount to be proven at trial.

75. By reason of the aforementioned actions taken by Direct Source, Capitol is entitled to the full range of relief available under the provision of the Lanham Act and the laws of the United States relating to trademarks and unfair competition, including 15 U.S.C. §1116-1118, as well as the common law relating to copyright infringement and other related state law.

## COUNT VIII
## COMMON LAW TRADEMARK INFRINGEMENT (Common Law of New York)

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. Direct Source has used and adopted Capitol's trademark ULTRA-LOUNGE for use in commerce in connection with Direct Source's products without any legitimate reason or satisfactory explanation thereof.

78. Direct Source has derived unlawful gains, profits, and advantages from its infringement, thereby depriving Capitol of rights and remunerations that would have come to Capitol but for Direct Source's infringement.

79. Direct Source's use of the infringing mark as described above has caused, is causing and, unless enjoined by this Court, will continue to cause confusion and mistake in the marketplace and deception of the trade and the public as to the relationship or affiliation of the parties and the source, origin or sponsorship of their respective products.

80. On information and belief, Direct Source, with full knowledge of Capitol's rights in its ULTRA-LOUNGE mark, and of the valuable goodwill associated therewith, has committed

the acts alleged herein willfully, with the intent to trade on, and in complete disregard of, Capitol's goodwill and the goodwill associated with Capitol's mark.

81. The acts of Direct Source complained of herein constitute trademark infringement in violation of the common law of New York.

82. Direct Source's use of the infringing mark as described above has impaired, is impairing and, unless enjoined by this Court, will continue to impair Capitol's reputation under its trademark and has caused, is causing and, unless enjoined by this Court, will continue to cause injury and damage to Capitol for which Capitol is entitled to the full range of relief available under the common law.

WHEREFORE, Capitol demands:

A. that Defendant be adjudged to have infringed Capitol's common law copyrights and related common law rights;

B. that Defendant be adjudged to have infringed Capitol's famous U.S. Trademark ULTRA-LOUNGE in violation of 15 U.S.C. § 1114;

C. that Defendant be adjudged to have violated the provisions of 15 U.S.C. § 1125(a) in competing unfairly with Capitol, by using false designations of origin, false descriptions and representations in commerce to the damage of Capitol;

D. that Defendant be adjudged to have violated the provisions of 15 U.S.C. § 1125 in causing dilution of the distinctive quality of the DIRECT SOURCE trademark;

E. that Defendant's copyright infringements and related common law violations, trademark infringements, trademark dilutions, false designations of origin, and unfair competition be determined to be deliberate and willful;

   F. that Defendant, its agents, officers, servants, employees, successors and/or assigns, and all persons or companies in active concert and/or participation with them, be permanently enjoined from:

  (1) importing, reproducing, making, reprinting, publishing, displaying, manufacturing, selling, offering for sale, promoting, advertising, marketing, distributing and/or commercially exploiting in any manner in the United States, either directly or indirectly, any of the Dean Martin Compilations or Capitol Compilations, or any other recordings to which Capitol has exclusive rights in the United States for which such acts would violate Capitol's rights;

  (2) using Capitol's registered trademarks, or any other confusingly similar trademarks such as DIRECT SOURCE for or in connection with advertising, marketing, promoting, selling or distributing and/or commercially exploiting in any manner goods or services which are likely to cause confusion, mistake or deception with the DIRECT SOURCE name, mark and designation;

  (3) practicing trademark infringement, false designation of origin, trademark dilution, false advertising, unfair competition, and unfair trade practices or misappropriation against Capitol;

  (4) practicing any conduct aimed at or likely to result in diverting business intended for Capitol or injuring Capitol's goodwill and business reputation by way of imitation, misrepresentation, false statements, advertisements, fraud and/or deception;

   G. that Defendant be directed to deliver to Capitol for destruction all recordings, matrices, masters, tapes, and/or other materials in Defendant's possession or control, which, if sold, distributed or used in any way would violate Paragraph F above;

   H. that Capitol be awarded a disgorgement of Defendant's gains, profits and advantages derived from Defendant's unlawful and inequitable activities;

   I. that Capitol be awarded actual damages and all profits in an amount to be determined at trial, and/or treble damages as provided by 15 U.S.C. § 1117;

      J.      that Capitol be awarded punitive or enhanced damages for Defendant's willful and intentional behavior in an amount to be determined at trial;

      K.      that Capitol be awarded its reasonable attorneys' fees;

      L.      that Capitol be awarded the costs of this action;

      M.      that Capitol be awarded prejudgment interest on all sums awarded; and

      N.      that Capitol be granted such other relief as this Court may deem just and proper.

Dated: New York, New York
       April 13, 2007

By: _____
Joseph J. Sullivan III (JS 1889)
Sheindlin & Sullivan, LLP
350 Broadway, 10th Floor
New York, NY 10013
Telephone: (646) 201-9120
Facsimile: (212) 202-4378

Attorneys for Plaintiff
CAPITOL RECORDS, INC.